HERMIDA, APELANTE, *v.* MÁRQUEZ, APELADO.

APELACIÓN procedente de la Corte de Distrito de Aguadilla.

No. 864.—Resuelto en mayo 5, 1913.

TRANSACCIÓN—CONSENTIMIENTO NULO—ERROR—DOLO.—Cuando una parte presta su consentimiento a una transacción creyendo que la finca objeto de dicha transacción estaba sólo afecta a dos hipotecas y resulta que tenía una tercera

hipoteca que aquella parte desconocía, tal transacción es nula· por haber sido prestado el consentimiento por error sobre sobre una condición esencial del contrato, sin que sea necesario para la existencia de tal nulidad el que la otra parte obrara con dolo.

COSTAS—HONORARIOS DE ABOGADOS—PROCEDIMIENTO.—En una sentencia que condena a una parte al pago de costas y honorarios de abogados no puede fijarse el importe de estos, sino que deben fijarse en un memorándum de costas sujeto a impugnación mediante los trámites establecidos en los artículos 327 y 339 del código de Enjuiciamiento Civil enmendados por ley de marzo 12, 1908.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. Carlos Franco Soto.*

El apelado no compareció.

EL JUEZ PRESIDENTE SR. HERNÁNDEZ, emitió la opinión del tribunal.

Con fecha 23 de mayo de 1911 presentó demanda Angel Hermida y Jorge a la Corte de Distrito del Distrito Judicial de Aguadilla, contra Baltazar Márquez y Palou para que se dictara fallo contra éste condenándole a pagar al demandante la suma de $800, intereses legales y costas que originara el procedimiento.

La expresada suma, según alega el demandante, procedía de un crédito por igual cantidad que había cedido Nicolás Gilormini a Angel Hermida por escritura pública de 15 de marzo de 1909, habiéndose originado tal crédito en transacción habida entre Gilormini y Márquez, en virtud de cuya transacción el primero se obligó a entregar al segundo cierta finca de su propiedad sobre la que pesaban dos créditos hipotecarios de que Márquez era dueño, obligandose éste a su vez a pagar a Gilormini la suma de $800.

El demandado impugnó la demanda por el fundamento de que la finca de que se trata había resultado gravada con otro crédito hipotecario de que no tuvo conocimiento al aceptar la transacción de que se deja hecho mérito, y además alegó la excepción de cosa juzgada por cuanto la cuestión envuelta en el presente caso había sido ya resuelta y decidida por la misma corte de distrito el 29 de octubre de 1910 en pleito número 662 seguido por *Baltazar Márquez* v. *Nicolás Gilormini.*

Celebrado el juicio, el juez, apreciando las pruebas practicadas, llegó a las siguientes conclusiones de hecho:

1ª. Que siendo dueño Don Baltazar Márquez de dos créditos hipotecarios que gravaban una finca de Don Nicolás Gilormini, uno por valor de $12,000 constituído a favor de Don Octavio Giovanneti, y otro $3,000 que luego quedó reducido a $1,492.35 a favor de Don Antonio Alcóver, se suscitaron diferencias al gestionar Márquez el cobro, y para dirimirlas acreedor y deudor nombraron de conformidad entre ellos cuatro personas, dos por cada parte, para que acordaran lo que creyeran más justo, habiendo convenido esas personas a nombre de sus comitentes en que Gilormini adjudicaría a Márquez la finca en pago de los créditos hipotecarios de que era dueño Márquez, obligándose éste a su vez a entregar a Gilormini la suma de $800, $400 de contado y los otros $400 a un año plazo.

2ª. Que ni en el acto de la transacción ni con anterioridad a ella se hizo mención de ningún otro crédito hipotecario que además de los dos expresados gravara la finca, de lo que estuvo ignorante Márquez hasta que el Notario Don Juan Zacarías Rodríguez encargado de redactar la escritura de adjudicación de la finca en pago de las dos hipotecas de Márquez, al examinar la documentación encontró que sobre la misma finca pesaba una tercera hipoteca por $2,000 a favor de Don Luis Gonzague, sobre lo cual llamó la atención de Márquez, quien estimándose desligado de la transacción concertada, por no creerse obligado al reconocimiento de ese tercer crédito que ignoraba, acudió a la vía judicial para hacer efectivos los dos créditos hipotecarios, lo que obtuvo, adjudicándosele en pago de aquéllos la finca hipotecada.

En vista de esos hechos y de los artículos 1232, 1233, 1236 y 1237 del Código Civil vigente, la corte dictó sentencia en 1º. de marzo del año próximo pasado, por la que ordena que el demandante Hermida no obtenga ni recobre nada del demandado Márquez y que éste vaya libre de toda responsabilidad, desestimando además la excepción de cosa juzgada

alegada por el demandado y disponiéndo que el demandante pague las costas del juicio y la suma razonable de $150 como honorarios al abogado Salvador Suau, que lo es del demandado.

Contra la anterior sentencia interpuso la representación del demandante recurso de apelación para ante esta Corte Suprema, y en su alegato escrito alega como motivos del recurso los siguientes:

*Primero.* Que la Corte de Distrito de Aguadilla apreció con grave error la prueba e hizo indebida aplicación de los artículos 1236 y 1237 del Código Civil Revisado.

*Segundo.* Que la corte inferior infringió la ley para enmendar los artículos 327 y 339 del Código de Enjuiciamiento Civil, aprobada en marzo 12 de 1908.

La parte apelante en su alegato escrito trata de demostrar mediante examen de las pruebas aportadas al juicio, que el demandado Don Baltazar Márquez, al aceptar la transacción habida entre él y Don Nicolás Gilormini, tenía conocimiento no sólo de los créditos de Giovanneti y Alcóver que habían de ser satisfechos a Márquez mediante entrega de la finca de Gilormini, sino que, además, le constaba la existencia del otro crédito a favor de Don Luis Gonzague, y en apoyo de este hecho invoca la declaración del mismo demandado, quien dice, ''que recuerda haber escrito una carta a Gilormini en donde le hacía mención de la hipoteca de Gonzague para llevarla a inscribir.''

Dicha manifestación de Márquez no es bastante por sí sola para que en vista de ella, tengamos que aceptar que efectivamente Márquez al aceptar la transacción tenía conocimiento del crédito a favor de Gonzague, pues hemos examinado las cuatro cartas que aparecen en el récord con fechas 1, 7 y 31 de enero de 1909 y 14 de febrero del mismo año, la primera de ellas y la cuarta dirigidas por Márquez a Don Ricardo Méndez, y la segunda y tercera dirigidas por él mismo Márquez a Don Nicolás Gilormini y en ninguna de dichas cartas se hace la más ligera indicación de la hipoteca

de Gonzague. Solamente en la carta de 31 de enero dice Márquez a Gilormini, sería conveniente que él enviara la documentación de la finca o sean las escrituras de venta de Octavio y de Gonzague, y también las copias de las hipotecas, si las tenía, pues así podría irse redactando la escritura y abreviar el trabajo del notario.

En esa carta nada se dice de hipoteca a favor de Gonzague sino de venta hecha por Gonzague.

Tampoco en su declaración explica Márquez cuál fué la fecha en que escribió a Gilormini mencionándole la hipoteca de Gonzague, y si bien dice que no se sintió sorprendido cuando el Notario Don Juan Z. Rodríguez le expresó que además de su hipoteca y de la de Alcóver, sobre la finca había otra de Gonzague, seguidamente añade que le extrañó mucho esa hipoteca porque ignoraba su existencia, a pesar de que tenía conocimiento de la venta de Gonzague a Gilormini.

El Notario Don Juan Z. Rodríguez refiere que, cuando se preparaba para otorgar la escritura de adjudicación de la finca por Gilormini a Márquez se enteró de que la finca había sido adquirida por Gilormini y Gonzague, quien vendió al otro su condominio, dejándolo éste hipotecado en garantía de dos pagarés por dos mil pesos que libró a favor del vendedor el comprador, y al que manifestó el testigo que eso era una hipoteca, contestándole Gilormini que no era una hipoteca porque no estaba inscrita y además estaba pagada, en vista de lo cual se retiró Márquez diciendo, que con $2,000 más no aceptaba el arreglo ni podía cumplirlo, porque aparecía una cantidad mayor de los $800 que él había estado dispuesto a pagar.

Como se ve por lo expuesto, la corte inferior no cometió error al no estimar probado por declaración del demandado que éste al aceptar la transacción con Gilormini tenía conocimiento de la hipoteca de $2,000 a favor de Gonzague. Márquez ignoraba semejante hipoteca y al consentir en la transacción prestó su consentimiento bajo el supuesto de que sobre la finca de Gilormini no pesaban más hipotecas que las de Giovanneti y Alcóver, bajo cuyo supuesto fué que se obligó

a pagar a Gilormini la suma de $800, por haberse éste pres-
tado a hacerle entrega de la finca amistosamente, aunque re-
servándose Márquez el derecho de gestionar judicialmente el
cobro de las hipotecas si así convenía a sus intereses. Y no
cabe sostener como sostiene la parte apelante, que esa reserva
muestra el propósito que tenía Márquez de burlar la transac-
ción hecha, dejando de pagar a Gilormini los $800 de que se
deja hecho mérito, pues sólo revela que Márquez, por cual-
quier eventualidad que pudiera ocurrir, no quería renunciar
su acción hipotecaria, de resultado más seguro que la pro-
veniente de una transacción que no se elevaba a escritura
pública.

Establece el artículo 1232 del Código Civil que será nulo
el consentimiento prestado por error, violencia, intimidación
o dolo; y según el 1233, para que el error invalide el con-
sentimiento deberá recaer sobre la sustancia de la cosa que
fuere objeto del contrato o sobre aquellas condiciones de la
misma que principalmente hubieren dado motivo a cele-
brarlo.

El motivo impulsivo o causa que indujo a Márquez a
aceptar la transacción no fué otro que la consideración de
hacerse pago de los dos créditos hipotecarios de que era
dueño mediante la adjudicación y entrega de la finca hipo-
tecada, libre ésta de cualquier otro gravamen, obligándose a
pagar a Gilormini la suma de $800 en la forma ya expuesta,
una vez obtenida la adjudicación. La existencia de un tercer
gravamen de $2,000 sobre la finca, desconocido para Márquez,
vició de nulidad el consentimiento que Márquez prestó a la
transacción, bajo el supuesto erróneo de que sobre la finca no
pesaban más hipotecas que las dos que él iba a cobrar, por
haber recaído el error de Márquez sobre una de las condi-
ciones que afectaba a la esencia de un contrato que Márquez
no hubiera celebrado si hubiera sabido que además de los
$800 que había de satisfacer a Gilormini había de pagar otros
$2,000 para cancelar la hipoteca de Gonzague.

Los artículos ya citados del código han tenido debida

aplicación por la corte inferior y no es necesario discutir si ha habido infracción de los artículos 1236 y 1237 del mismo código relativos al dolo, pues aun en el supuesto de que el consentimiento a la transacción no hubiera sido prestado mediante dolo por parte de Gilormini, lo fué por error en la forma ya expuesta y tal error era bastante sin necesidad de dolo para que quedara anulada la transacción y en su consecuencia, no puede exigirse al demandado el pago de los $800 que se le reclaman por el demandante.

Además, la representación de la parte apelante no cita como infringidos los artículos 1232 y 1233, sino los 1236 y 1237 del Código Civil y lo hace bajo supuestos de hechos enteramente distintos de los que la corte inferior ha tenido en cuenta para la aplicación de dichos artículos, por lo que si dicha corte no ha cometido error como hemos sostenido en la apreciación de las pruebas, cae por su base la infracción alegada.

Aunque el primer motivo del recurso es insostenible no sucede lo propio con el segundo, pues entendemos que la corte inferior infringió la ley para enmendar los artículos 327 y 339 del Código de Enjuiciamiento Civil, aprobada en marzo 12 de 1908, al condenar al demandante a satisfacer la suma de $150 como honorarios al abogado del demandado.

Al resolver en el caso de *Veve* v. *El Municipio de Fajardo,* 18 D. P. R., 764, dimos interpretación a los artículos 327 y 339 del Código de Enjuiciamiento Civil, enmendados por la ley de 12 de marzo de 1908. Allí dejamos establecido que el derecho del litigante a que en el caso de que se le concedan las costas se le abone por la parte condenada el importe de los honorarios devengados por su abogado, debe ser declarado en la sentencia condenando expresamente al pago de honorarios, y allí también añadimos que en la impugnación del memorándum de costas, desembolsos y honorarios no podrá discutirse el derecho a cobrar las cantidades que dichos conceptos entrañan, cuyo derecho habrá sido declarado por sentencia, sino la extensión de ese derecho, bien por ser exce-

sivos los honorarios, bien por tratarse de partidas de costas y de desembolsos indebidas o excesivas.

Tenemos, pues, que la corte inferior pudo condenar al demandante a que pagara las costas del juicio y los honorarios del abogado del demandado, pero no pudo fijar en la sentencia dichos honorarios, pues éstos deben fijarse en el memorándum que ha de presentarse para su cobro según el artículo 339 citado y que está sujeto a impugnación mediante los trámites establecidos en la ley.

Por las razones expuestas opinamos procede la confirmación de la sentencia apelada, menos en la parte relativa a que el demandante pague la suma de $150 como honorarios al abogado del demandado.

*Resuelto de conformidad.*

Jueces concurrentes: Sres. Asociados Wolf, del Toro y Aldrey.

El Juez Asociado Sr. MacLeary no tomó parte en la resolución de este caso.